Judgment rendered July 17, 2019.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 52,750-WCA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

ROBERT DANIELS                                    Plaintiff-Appellee

versus

THE STATE OF LOUISIANA,                          Defendant-Appellant
THROUGH THE DEPARTMENT
OF TRANSPORTATION AND
DEVELOPMENT

* * * * *

Appealed from the
Office of Workers' Compensation, District 1-E
Parish of Franklin, Louisiana
Trial Court No. 1201716

Brenza Irving Jones
Workers' Compensation Judge

* * * * *

STATE OF LOUISIANA DOTD                          Counsel for Appellant
EDDIE DAVID GILMER
Assistant Attorney General

LAW OFFICES OF STREET & STREET                   Counsel for Appellee
By: Curtis Daniel Street

* * * * *

Before MOORE, STONE, and McCALLUM, JJ.

**STONE, J.**

In this workers' compensation case, the appellant, the State of Louisiana, through the Department of Transportation ("DOTD"), denied the appellee, Robert Daniels', request for an inpatient surgical procedure. Subsequently, the Office of Workers' Compensation Administration, through its Medical Director ("OWC"), also denied that request. The workers' compensation judge ("WCJ") reversed the decision of the OWC and ordered DOTD to provide and pay for the inpatient surgical procedure.

On appeal, in light of the Louisiana Supreme Court holding in *Church Mut. Ins. Co. v. Dardar,* 2013-2351 (La. 5/7/14), 145 So. 3d 271*,* this Court reversed the decision of the WCJ and remanded this matter for the parties to present evidence to the WCJ to show by clear and convincing evidence whether the medical director's conclusion was appropriate pursuant to La. R.S. 23:1203. *See Daniels v. State, Dep't of Transp. & Dev*., 48,578 (La. App. 2 Cir. 6/25/14), 144 So. 3d 1123.

Thereafter, the WCJ found in favor of Daniels and awarded costs of the requested surgical procedure, penalties, attorney fees, and payment for medical expenses associated with non-emergency care. For the following reasons, we affirm the judgment of the WCJ.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The following facts are taken from this Court's prior 2014 opinion:

> On October 28, 2010, Daniels suffered a work-related accident while employed by DOTD when he fell off a backhoe injuring the right side of his body, in particular his right shoulder. Payment of workers' compensation benefits associated with Daniels' work-related accident was initiated without dispute. An orthopedic physician, Dr. Douglas Brown, performed surgery on Daniels' right shoulder on June 13, 2011. The DOTD covered all of these medical expenses.

Thereafter, Daniels began complaining of lower back pain. After reviewing diagnostic tests, Dr. Brown recommended that Daniels undergo inpatient surgery–L4-5, L5-S1 anterior lumbar interbody fusion with LDR PEEK cages, bone marrow stem cells, morselized allograft, and SEP monitoring. The DOTD sought a second medical opinion from Dr. Powell Auer, who recommended that Daniels undergo more testing. After receiving a provocative lumbar discography report from Dr. John Ledbetter, Dr. Brown again recommended surgery. F.A. Richard & Associates, Inc. ("FARA"), as the insurance representative for Daniels' employer, denied Dr. Brown's request, finding that the recommended surgery did not meet the criteria established for intensity of services pursuant to the Louisiana Workers' Compensation Treatment Guidelines.

A disputed claim for medical treatment was filed with the Office of Workers' Compensation Administration ("OWC") Medical Director on behalf of Daniels. The medical director denied the appeal on March 6, 2012, concluding that the evidence did not support approval of the requested services per the Louisiana Medical Treatment Guidelines ("MTG"). As a result, Daniels filed Form 1008 (disputed claim for compensation), initiating the present claim.

On February 21, 2013, this matter was heard by the WCJ, who found that Daniels was entitled to the recommended surgery, and further, that the MTG did not apply since they went into effect after Daniels' accident.

DOTD filed an appeal of that judgment on March 18, 2013. This Court reversed the judgment in favor of Daniels and remanded the matter to the OWC to allow the parties to present evidence to the WCJ to show by clear and convincing evidence, whether the medical director's conclusion was appropriate. This case was heard by the WCJ again on October 19, 2017. Following the presentation of Daniels' case-in-chief, DOTD moved for involuntary dismissal. After oral arguments regarding the motion for dismissal, both Daniels and DOTD were instructed to provide briefs to the court on the issue of whether or not the plaintiff had shown by clear and

2

convincing evidence that the decision of the OWC Medical Director to deny the surgical treatment requested was a misapplication of the MTG.

On January 18, 2018, the WCJ rendered a decision denying DOTD's motion to dismiss, and trial resumed on March 19, 2018. Before trial proceedings began, both parties entered into a settlement for the indemnity portion of Daniels' workers' compensation claim. The settlement agreement reserved Daniels' right to proceed with the current litigation and agreed to allow the medical portion of the claim to continue. At the conclusion of trial, the WCJ found in favor of Daniels, ordered DOTD to provide and pay for the requested surgical procedure, and awarded $611 in medical expenses associated with non-emergency care. Daniels' demands for penalties and attorney fees were denied and dismissed with prejudice.

On April 10, 2018, Daniels filed a motion for new trial for re-argument, alleging that the judgment signed by the WCJ was incorrect because it did not reflect the decisions of the court or Daniels' demands as addressed in the WCJ's reasons for judgment. On May 4, 2018, Daniels also filed a motion to enforce settlement agreement, alleging that DOTD had failed and refused to pay the proceeds of the settlement agreement for the indemnity claim. Daniels' motion for new trial was heard before the WCJ on May 14, 2018. After the hearing, the court granted Daniels' motion for new trial and set a hearing for oral arguments to be heard on August 13, 2018.

On June 11, 2018, Daniels' motion to enforce settlement agreement was heard by the WCJ. After the hearing, the WCJ's oral reasons for judgment were announced in open court. A judgment ordering DOTD to

pay $14,400[1] in penalties for the settlement and $1,500 in attorney fees was signed and rendered on June 18, 2019. DOTD filed a motion for new trial on June 29, 2018, requesting that the June 18, 2018, judgment be withdrawn, and that the issues of the enforceability of the settlement, and penalties and attorney awards be reconsidered by the court.

During the hearing on August 13, 2018, the WCJ announced her reasons for judgment in open court, and ordered that the judgment signed on June 28, 2018, be revoked and rescinded; ordered DOTD to provide and pay for the surgery recommended by Dr. Brown; awarded $611 in expenses related to non-emergency care; and, denied Daniels' request for the payment of penalties and attorney fees. That same day, the WCJ also heard DOTD's motion for new trial. After the hearing, the WCJ denied that motion. DOTD filed the instant appeal.

## DISCUSSION

*Claim for Lumbar Interbody Fusion Surgery*

The first issue presented in this case is whether the WCJ erred in granting Daniels' requested claim for surgery. In its first and second assignment of error, DOTD questions both the WCJ's decision and the reasons in support of the decision to grant Daniels' claim and order DOTD to pay for the requested surgery.

Under La. R.S. 23:1203.1(I), the claimant's initial burden on appeal before the medical director remains one of proof by a preponderance of the evidence. *Church Mut. Ins. Co. v. Dardar*, 145 So. 3d 271, *supra*; *Gilliam v. Brooks Heating & Air Conditioning*, 49,161 (La. App. 2 Cir. 7/16/14),

---

[1] The amount of $14,400 represents a 24% penalty of the settlement amount.

4

146 So.3d 734. However, a claimant seeking judicial review of a decision made by the medical director must prove the necessity of the sought-after medical treatment by clear and convincing evidence. *Gilliam, supra; Friedman v. Ecolab, Inc.*, 50,358 (La. App. 2 Cir. 2/3/16), 187 So. 3d 491.

The clear and convincing standard in a workers' compensation case is an intermediate standard falling somewhere between the ordinary preponderance of the evidence civil standard and the beyond a reasonable doubt criminal standard. *Hatcherson v. Diebold, Inc.*, 00-3263 (La. 5/15/01), 784 So. 2d 1284; *Young v. Physicians & Surgeons Hosp.*, 39,348 (La. App. 2 Cir. 3/2/05), 895 So. 2d 723. To prove a matter by clear and convincing evidence means to demonstrate that the existence of the disputed fact is highly probable or much more probable than its nonexistence. *Young, supra; Hollingsworth v. Steven Garr Logging*, 47,884 (La. App. 2 Cir. 2/27/13), 110 So. 3d 1219.

Whether the claimant has carried his burden of proof and whether testimony is credible are questions of fact to be determined by the WCJ. *See Buxton v. Iowa Police Dep't*, 2009-0520 (La. 10/20/09), 23 So. 3d 275; *City of Shreveport v. Casciola*, 43,132 (La. App. 2 Cir. 3/26/08), 980 So. 2d 203. Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. *Buxton, supra; Casciola, supra.*

In this case, DOTD asserts that the WCJ largely based its decision to grant Daniels' claim on its own incorrect conclusion relating to utilization of inessential discretionary indicators. Specifically, DOTD takes issue with the the WCJ's conclusion that the OWC Medical Director's decision denying the surgical procedure recommended was based on discretionary indicators

5

not required for a spinal fusion. To that end, DOTD argues that Daniels failed to meet his burden and show by clear and convincing evidence that the decision of the medical director to deny the surgical treatment recommended by his treating physician Dr. Brown was a misapplication of the MTG.

We disagree. Following the trial on the merits, the WCJ, in her oral reasons for judgment, stated:

> A review of the medical evidence and the MTG revealed the medical director denied the requested surgery based upon discretionary indications for a spinal fusion. The requirements for the spinal fusion were clearly met. Medical records revealed all pain generators were adequately defined and treated. Physical medicine and manual therapy interventions are noted. The MRI and discography clearly showed disc pathology on the two levels at issue.
>
> In regard to the last indicator, jurisprudence has held the psychosocial evaluation is unnecessary unless the treating physician feels it needs to be done. A psychosocial evaluation is required only when the surgeon has concerns about the relationship between symptoms and findings or when the surgeon is aware of indications of psychosocial consultations or risk factors.
>
> According to Louisiana Revised Statute 23:1203.1(K), after the issuance of the decision by the medical director, any party who disagrees with the decision may then appeal by filing a disputed claim for compensation, which is LWC Form 1008. The decision may be overturned when it is shown by clear and convincing evidence that a decision of the medical director or associate medical director was not in accordance with the provision of this section.
>
> Inasmuch as the medical director denied the requested surgery due to indicators not required for a spinal fusion, his decision must be overturned. Claimant has demonstrated by clear and convincing evidence that the required preoperative clinical surgical indications for spinal fusion were met.

***

6

We find that based on the evidence presented in the record, the WCJ had a sufficient factual and legal basis for her conclusion that Daniels demonstrated by clear and convincing evidence that the medical director's denial of the surgery was a misapplication of the MTG. Therefore, the WCJ's decision to grant Daniels' claim for surgery was not manifestly erroneous.

*Medical Necessity of Recommended Surgical Procedure*

DOTD next contends that the primary issue is not the compensability of Daniels' work-related injury, but rather the medical necessity of Dr. Brown's recommended surgical procedure. DOTD urges that since Daniels proceeded to have the surgery without approval while the matter was still in litigation, the surgery should be considered non-emergency medical treatment pursuant to La. R.S. 23:1142. Further, DOTD maintains that Daniels failed to present any evidence to establish that the surgical procedure was deemed immediately necessary by his treating physician, Dr. Brown. DOTD submits that neither Daniels nor his health care provider was entitled to incur more than $750 in non-emergency diagnostic testing or treatment absent the mutual consent of DOTD and Daniels.

It is well settled that a workers' compensation claimant may recover costs of medical treatment that is reasonably necessary for the treatment of a medical condition caused by a work-related injury. La.-R.S. 23:1203(A); *Gilliam*, *supra*; *Friedman, supra.*

Pursuant to the Louisiana Administrative Code, "medically necessary treatment" includes services that are in accordance with the medical treatment guidelines ("MTG") and are clinically appropriate and effective for the patient's illness, injury or disease. *See*, 40 LA ADC Pt. I, § 2717(A);

7

*Gilliam, supra; Friedman, supra*; *Thomas v. Marsala Beverage Co.*, 50,062 (La. App. 2 Cir. 9/30/15), 179 So. 3d 620.

To be deemed "medically necessary," a service must be consistent with the diagnosis and treatment of a condition or complaint, in accordance with the MTG, not solely for the convenience of the patient, family, hospital or physician, and furnished in the most appropriate and least intensive type of medical-care setting required by the patient's condition. 40 LA ADC Pt. I, § 2717(C)(3); *Sanchez v. Caesar's Entertainment, Inc.*, 49,864 (La. App. 2d Cir. 6/24/15), 166 So. 3d 1283; *Gilliam, supra; Friedman, supra.*

Generally, an employee must receive prior approval from his employer before he seeks non-emergency medical attention for a work-related accident or injury. *See* La. R.S. 23:1142(B); *INA v. Hayes*, 93-1648 (La. App. 3 Cir. 8/31/94), 643 So. 2d 190, writ denied 94-2471 (La. 12/9/94), 647 So.2d 1113. This statute allows a health care provider to incur up to $750 in non-emergency diagnostic testing and treatment without the mutual consent of the payor for the payment of the claimant's medical expenses resulting from a work-related injury.

An exception to La. R.S. 23:1142 is found in subsection (E), which states:

> In the event that the payor has denied that the employee's injury is compensable under this Chapter, then no approval from the payor is required prior to the provision of any diagnostic testing or treatment for that injury.

In interpreting La. R.S. 23:1142 (E), courts have held that an insurance carrier's refusal to authorize medical treatment can constitute a denial of compensability as provided in subsection (E) and, therefore, no approval from the payor may be required. *Sneed v. RTA/TMSEL*, 2003-1532

8

(La. App. 4 Cir. 2/25/04), 869 So. 2d 254; *Gros v. Gaudin*, 2000-1015 (La. App. 5 Cir. 10/31/00), 773 So. 2d 172; *Barron v. First Lake Properties, Inc.*, 93-902 (La. App. 5 Cir. 3/29/94), 636 So. 2d 970. A WCJ's finding as to whether a particular medical treatment is necessary is factual in nature and will not be disturbed on review in the absence of manifest error or unless it is clearly wrong. *Freeman v. Poulan/Weed Eater*, 93-1530 (La.1/14/94), 630 So. 2d 733.

In this case, we find that the medical necessity of Daniels' requested surgical procedure has been established. Thus, the WCJ did not err in determining that Daniels was entitled to $611 related to non-emergency care expenses. DOTD's argument is solely based on the fact that Daniels' claim for surgery was in litigation at the time the time he chose to undergo the surgical procedure. We find that Louisiana law creates a correlation between the requested service, diagnosis and treatment of a condition, and the MTG. Here, once the WCJ determined that Daniels' requested surgery was consistent with the diagnosis and treatment of his sustained injuries and in accordance with the MTG, Daniels' requested surgery became medically necessary.

The medical necessity of Daniels' requested surgical procedure is also evidenced by DOTD's own admission at the trial on the merits. During trial, DOTD's own witness, Lisa Vincent, an insurance litigation consultant, stated:

> Mr. Street: Dr. Auer, who was engaged by the state as the state's choice of orthopedic surgeons. Correct?
>
> Ms. Vincent: Correct.

Mr. Street: He examined the situation and he agreed with Dr. Brown that this surgery is reasonable and necessary except he wanted a discogram to verify how many levels needed to be done. Correct?

Ms. Vincent: Yes.

****

Mr. Street: In other words, Dr. Brown wanted to do this surgery before there was any discogram?

Ms. Vincent: Yes.
Mr. Street: Okay. Can you tell us why FARRA denied this surgery after both Dr. Brown and its own doctor, Dr. Auer, agreed that the surgery was appropriate?

Ms. Vincent: Apparently because – it was denied because it didn't meet the requirements for the Louisiana MTG.

***

Thus, based on the facts presented, we cannot find that the WCJ committed manifest error in concluding that Daniels' requested surgical procedure was medically necessary and in subsequently awarding expenses related to non-emergency care.

*Motion to Enforce Settlement Agreement*

In its third and final assignment of error, DOTD argues that the WCJ erred in granting Daniels' motion to enforce settlement and ordering the payment of penalties and attorney fees. DOTD contends that an agreement to settle a workers' compensation claim that does not involve a lump sum payment or compromise settlement in exchange for full and final discharge and release of the employer and/or his insurer from liability under the Workers' Compensation Act is not governed by La. R.S. 23:1272(A).

La. R.S. 23:1272(A) provides:

A lump sum or compromise settlement entered into by the parties under R.S. 23:1271 shall be presented to the workers' compensation judge for approval through a petition signed by

10

all parties and verified by the employee or his dependent, or by recitation of the terms of the settlement and acknowledgment by the parties in open court which is capable of being transcribed from the record of the proceeding.

DOTD maintains that for the March 19, 2018, agreement to constitute a compromise settlement under La. R.S. 23:1272(A), the provisions of La. R.S. 23:1271 must be satisfied.

La. R.S. 23:1271 provides:

A. It is stated policy for the administration of the workers' compensation system of this state that it is in the best interest of the injured worker to receive benefit payments on a periodic basis. A lump sum payment or compromise settlement in exchange for full and final discharge and release of the employer, his insurer, or both from liability under this Chapter shall be allowed only:
(1) Upon agreement between the parties, including the insurer's duty to obtain the employer's consent;
(2) When it can be demonstrated that a lump sum payment is clearly in the best interests of the parties; and
(3) Upon the expiration of six months after termination of temporary total disability. However, such expiration may be waived by consent of the parties.
B. As used in this Part, "parties" means the employee or his dependent and the employer or his insurer. Nothing in this Section shall require the office of risk management to obtain approval of settlements from the employing state agency, department, council, board, or political subdivision.

In its brief, DOTD argues that Subsection (A) plainly states that a lump sum payment or compromise settlement in exchange for a full and final discharge and release of the employer and/or his insurer from liability under the Workers' Compensation Act ("WCA") shall be allowed only if certain requirements are satisfied. As such, DOTD argues, La. R.S. 23:1271 clearly limits itself to an agreement for a lump sum payment or compromise settlement in exchange for an employer's or insurer's full and final discharge from liability under the WCA.

11

DOTD further maintains that the agreement with Daniels announced in open court prior to the start of the trial on March 19, 2018, only constituted a partial settlement of Daniels' entire workers' compensation claim, not a lump sum payment or compromise settlement in exchange for full and final discharge and release of DOTD pursuant to *Trahan v. Coca Cola Bottling Co. United, Inc.*, 2004-0100 (La. 3/2/05), 894 So. 2d 1096.

In *Trahan*, the claimant and the defendant reached a settlement of the claimant's medical claim in open court, but reserved his right to future compensation. Three days later, the defense counsel sent the claimant's counsel a check, along with a receipt and release and motion to dismiss without prejudice. Defense counsel instructed the claimant's counsel not to negotiate the check until after execution of the receipt and release; the claimant refused. The claimant sought penalties and attorney fees, and the workers' compensation hearing officer found that the parties entered into a binding settlement; this finding was affirmed by the court of appeal.

The Louisiana Supreme Court granted writs to determine whether the parties had entered into an enforceable compromise settlement. In its opinion, the Supreme Court determined that the agreement reached between the parties was not a lump sum payment or compromise payment under La. R.S. 23:1271, and the provisions of La. R.S. 23:1272 are inapplicable. Instead, the court found that the provisions of La. C.C. art. 3071 applied, stating:

> As we have already explained, La. R.S. 23:1272 does not apply to the facts presented. Although La. R.S. 23:1272 does create "an exception to other general statutory…rules of compromise and supersedes them in the area in which it is intended to operate, the statute is not intended to operate in areas such as this where the agreement is not in exchange for the full and

12

final discharge and release of the employer from liability under the WCA. In cases to which La. R.S. 23:1272 doe apply, however, its requirements must be satisfied and the general provisions of La. C.C. art. 3071 continue to inapplicable. *See Trahan*, 894 So. 2d at 1105.

***

The standard of review for a motion to enforce settlement is the manifest error/clearly wrong standard. *Reed v. 7631 Burthe Street, LLC*, 2017-0476 (La. App. 4 Cir. 12/28/17), 234 So. 3d 1201; *Eckstein v. Becnel*, 2017-0868 (La. App. 4 Cir. 6/27/18), 250 So. 3d 1046, *writ denied*, 2018-1275 (La. 11/5/18), 255 So. 3d 1054.

In the instant case, we find that the WCJ was not manifestly erroneous in granting Daniels' motion to enforce settlement. A review of the record shows that DOTD and Daniels reached an agreement regarding his indemnity claim and announced it in open court before trial resumed on March 19, 2018.

The trial transcript reveals the following:

Mr. Street: Your Honor, before we get to that, we have agreed upon a settlement of the indemnity claim in this matter for a full and final settlement in the amount of sixty thousand dollars ($60,000). And we'd ask the Court to approve that at this time. And then the State and the parties, both parties, reserve their rights to proceed with this litigation and the medical claim shall continue. It's not being settled. But we have agreed to settle the indemnity claim only for sixty thousand dollars ($60,000) and ask the Court to approve that.

The Court: All right. Are you in agreement?

Mr. Gilmer: We are in agreement, Your Honor.

***

Over 30 days later, on May 4, 2018, Daniels files a motion to enforce settlement asserting, "…[as] of the date of the filing of this motion, [DOTD] has failed and refused to pay the proceeds of the settlement." Although

13

DOTD relies on the holding of *Trahan* in support its argument, it is more appropriately utilized in support of the WCJ's decision to grant Daniels' motion to enforce. We agree with DOTD's characterization of the indemnity settlement agreement as a partial settlement since both parties reserved their rights to proceed with litigation of Daniels' medical claim.

However, like the Court in *Trahan*, *supra*, we find that La. C.C. art. 3071 applies to the agreement reached between DOTD and Daniels. Article 3071 provides that a compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship. According to the 2007 Revision Comment (c), a valid and enforceable settlement may also be a compromise if it is reduced to writing. Louisiana courts have held that "settlement" must be equated with compromise in connection with the rules governing compromise. *See Townsend v. Square*, 94-0758 (La. App. 4 Cir. 9/29/1994) 643 So. 2d 787. To be enforceable under Article 3071, a compromise must either (1) be reduced to writing or signed by the parties or their agents, or (2) be recited in open court and be capable of transcription from the record of the proceeding. *Lavan v. Nowell*, 98-0284 (La. 4/24/98), 708 So. 2d 1052. Article 3071 additionally provides that when the agreement is validly recited in open court, each party acquires the right of judicially enforcing the performance of the agreement even though its substance may later be written in a more convenient form. *Trahan, supra*.

Our review of transcript of these proceedings convinces us that a valid and enforceable compromise was reached on March 19, 2018. Counsel for DOTD and Daniels, in front of the WCJ, all acknowledged, recited, and agreed to the settlement terms of the indemnity claim. Moreover, by the

14

very language spoken in court, the indemnity claim settlement is, as both parties always fully intended it to be, a full and final settlement of Daniels' indemnity claim. We now turn our attention to the final issue of the penalties and attorney fees awarded in this case.

*Penalties and Attorney fees*

An employer's failure to provide payment of benefits or authorize medical treatment will result in an imposition of a penalty and attorney fees "unless the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control." La. R.S. 23:1201(F)(2); *Friedman, supra; Arrant v. Wayne Acree PLS, Inc.*, 51,238 (La. App. 2 Cir. 05/02/17), 218 So. 3d 737; *Authement v. Shappert Eng'g*, 2002-1631 (La. 02/25/03), 840 So. 2d 1181.

Because one purpose of the workers' compensation law is to promptly provide compensation and medical benefits to an employee who has suffered injury arising out of and in the course and scope of employment, a failure to timely provide payment can result in the imposition of penalties and attorney fees except when the claim is reasonably controverted. *See Lafayette Bone & Joint Clinic v. Louisiana United Bus. SIF*, 2015-2137 (La. 6/29/16), 194 So. 3d 1112; *Authement, supra. See also* La. R.S. 23:1203(F)(2) ("This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control").

Awards of penalties and attorney fees in workers' compensation cases are essentially penal in nature, and are imposed to deter indifference and undesirable conduct by employers and their insurers toward injured workers. *Trahan, supra; Williams v. Rush Masonry, Inc.*, 98-2271 (La. 6/29/99), 737

15

So. 2d 41. While the benefits conferred by the Workers' Compensation Act are to be liberally construed, penal statutes are to be strictly construed. *Id.* La. R.S. 23:1201(G) is a penal statute which must be strictly construed. *Trahan, supra; See also Smith v. Quarles Drilling Co.*, 04-0179 (La. 10/29/04), 885 So. 2d 562.

La. R.S. 23:1201(G) provides for penalties and attorney fees as follows:

> If any award payable under the terms of a final, non-appealable judgment is not paid within thirty days after it becomes due, there shall be added to such award an amount equal to twenty-four percent thereof or one hundred dollars per day together with reasonable attorney fees, for each calendar day after thirty days it remains unpaid, whichever is greater, which shall be paid at the same time as, and in addition to, such award, unless such nonpayment results from conditions over which the employer had no control. No amount paid as a penalty under this Subsection shall be included in any formula utilized to establish premium rates for workers' compensation insurance. The total one hundred dollar per calendar day penalty provided for in this Subsection shall not exceed three thousand dollars in the aggregate.
>
> ***

The crucial inquiry in determining whether to impose penalties and attorney fees is whether the payor had an articulable and objective reason to deny payment at the time it took action. *Lafayette Bone & Joint Clinic, supra; Authement, supra. See also Brown v. Texas–LA Cartage, Inc.*, 98-1063 (La. 12/01/98), 721 So. 2d 885, 890; *Arrant, supra*; *Koenig v. Christus Schumpert Health Sys.*, 44,244 (La. App. 2 Cir. 05/13/09), 12 So. 3d 1037. The WCJ has great discretion in determining whether to allow or disallow penalties and attorney fees, and his or her decision will not be disturbed absent manifest error. *Alexander v. Pellerin Marble & Granite*, 93-1698 (La. 01/14/94), 630 So.2d 706; *Friedman, supra*; *Arrant, supra*.

16

Here, we find that *Trahan's* holding also applies to the award of penalties and attorney fees in the matter *sub judice*. In *Trahan*, the Louisiana Supreme Court held that a claimant is eligible for an award of penalties and attorney fees pursuant to a valid and enforceable compromise unless the defendant's failure to pay within 30 days resulted from conditions over which it had no control. Like the parties in *Trahan*, *supra*, Daniels and DOTD reached a valid and enforceable compromise in open court on March 19, 2018. At the hearing on Daniels' motion to enforce, the WCJ correctly determined that the present facts were analogous to *Trahan* and DOTD did not reasonably controvert Daniels' indemnity claim. The WCJ stated:

> The Court: All right. I don't see a distinction in reference to the ruling of the Supreme Court and what I heard in this court. They were both partial settlements. And they were payable prior to the submission. And so, I'm granting the request to have the judgment enforced. I do find that the claimant is entitled to a penalty as a result of the failure to pay within the 30 day period. So I'm granting that. And I find that attorney fees are due in this matter. How much time did you spend on this part only, Mr. Street? How much time are we talking about?
>
> Mr. Street: I didn't spend a whole of time on this, Your Honor. Probably researching and writing the motion and filing it with the Court, probably three hours.
>
> The Court: Okay. All right, so the Court is awarding fifteen hundred dollars ($1500) as an attorney fee in this matter.

*** 

Accordingly, we find that the record supports the WCJ's finding that DOTD failed to pay Daniels' indemnity claim within 30 days. To that end, the WCJ was within her vast discretion to allow penalties and attorney fees based on that failure and refusal.

17

**CONCLUSION**

For the foregoing reasons, we affirm the judgments of the workers' compensation judge which found in favor of appellee, Robert Daniels, and awarded costs of the requested surgical procedure, penalties, attorney fees, and payment for medical expenses associated with non-emergency care. The appellant, the State of Louisiana, is ordered to pay deferred costs of $25 pursuant to La. R.S. 13:4521.

**AFFIRMED.**